# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIMOTHY TURNER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-1477** |
| **BURL CAIN, WARDEN** | **SECTION: "I"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing. For the reasons which follow, the Magistrate Judge issues this Report and Recommendation, in accordance

with the applicable law, hereby recommending that the instant application for federal habeas corpus relief be **DENIED WITH PREJUDICE**.[1]

## PROCEDURAL HISTORY

Petitioner, Timothy Turner, is a state prisoner currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On January 30, 2003, the Jefferson Parish Grand Jury issued an indictment charging him with one count of aggravated rape in violation of La. R.S. 14:42.[2] On January 31, 2003, the petitioner was arraigned and he entered a plea of not guilty.[3] Mr. William M. Doyle was appointed as his attorney and trial began on December 2, 2003.[4] The twelve-member jury returned a verdict of guilty as charged on December 3, 2003.[5] On December 11, 2003, the district court sentenced the petitioner to life in prison without parole and with credit for time served.[6] The Twenty-Fourth Judicial District Court, Parish of Jefferson, granted the petitioner's motion for appeal on December 11, 2003.[7] The Louisiana

---

[1]The court wishes to acknowledge the assistance of H. Hendrix, a third-year student at Tulane Law School, who assisted in the research and preparation of this decision.

[2]*See* State Rec. Vol. I of IV, Minute Entry dated 1/30/03.

[3]*See* State Rec. Vol. I of IV, Minute Entry dated 1/31/03.

[4]*See* State Rec. Vol. I of IV, Minute Entry dated 12/03/03.

[5]*Id.*

[6]*See* State Rec. Vol. I of IV, Minute Entry dated 12/11/03.

[7]*See* State Rec. Vol. I of IV.

Appellate Project was appointed to represent the petitioner in his appeal[8] and Ms. Jane Beebe filed appellate brief, No. 2005-KA-0075 with the Louisiana Fifth Circuit Court of Appeal on February 14, 2005, on the petitioner's behalf .[9]  The sole issue discussed in the brief was the sufficiency of the evidence presented by the State to convict the petitioner.[10]  The State filed its responsive brief on March 11, 2005.[11]  The Louisiana Fifth Circuit Court of Appeal affirmed the petitioner's conviction and sentence on May 31, 2005.[12]

The petitioner then filed an application for a writ of certiorari with the Louisiana Supreme Court on December 30, 2005, which was denied on May 26, 2006.[13]  He filed an Application for Post-Conviction Relief on September 15, 2006 with the Twenty-Fourth Judicial District Court, Parish of Jefferson[14] and, on January 4, 2007, the petitioner filed a Supplemental Memorandum in Support of his

---

[8]*Id.*

[9]*See* State Rec. Vol. II of IV.

[10]*Id.*

[11]*Id.*

[12]*Id.*

[13]*See* State Rec. Vol. III of IV.

[14]*Id.*

Application for Post-Conviction Relief.[15]  The State filed a response to the petitioner's

Application for Post-Conviction Relief on January 12, 2007.[16]  The Twenty-Fourth

Judicial District Court, Parish of Jefferson, issued an order denying relief on February

15, 2007.[17]  The petitioner then filed his Notice of Intent to seek Writ Application with

the Louisiana Fifth Circuit Court of Appeal on March 8, 2007.[18]  The Fifth Circuit

denied the writ application on March 20, 2007, stating that no error was disclosed in

the trial court's ruling of February 15, 2007.[19]

The petitioner applied for supervisory writs with the Louisiana Supreme Court,

docket number 2007-KH-0927, seeking review of the Fifth Circuit Court of Appeal's

writ denial on April 9, 2007.[20]  The Louisiana Supreme Court denied the petitioner's

application on February 1, 2008.[21]  Petitioner then filed the instant federal habeas

petition, on March 17, 2008, raising the following claims: 1) insufficiency of the

evidence to support the petitioner's conviction and 2) ineffective assistance of

---

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]*See* State Rec. Vol. III of IV.

[19]*Id.*

[20]*See* State Rec. Vol. IV of IV.

[21]*Id.*

counsel.[22]  Under his second claim, the petitioner argues three points:  a) trial counsel failed to challenge the sufficiency of the evidence; b) trial counsel failed to pursue plea negotiations prior to trial; and c) the cumulative impact of trial counsel's errors warrants a new trial.[23]

The State was granted an extension of time to answer the petitioner's habeas petition on July 7, 2008.[24]  A second extension of time was granted on July 28, 2008.[25]  The State filed its response to the petitioner's habeas petition on August 18, 2008.[26]  In its response, the State concedes that the petitioner's petition is timely filed in accordance with 28 U.S.C. 2244(d)(1).[27]  Further, the State concedes that the petitioner exhausted the claims raised in his federal petition by bringing them before the Louisiana Supreme Court in Writ Nos. 05-KO-2591 and 07-KH-927.[28]

---

[22]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008.

[23]*Id.*

[24]*See* Fed. Rec. Doc. 10, Order Granting Motion for Extension of Time to Answer stamp dated July 7, 2008.

[25]*See* Fed. Rec. Doc. 12, Order Granting Second Motion for Extension of Time to Answer stamp dated July 28, 2008.

[26]*See* Fed. Rec. Doc. 13, Response to Petition for Writ of Habeas Corpus stamp dated August 18, 2008.

[27]*Id.*

[28]*Id.*

On September 8, 2008, the petitioner filed a Traverse to the State's response to his habeas petition reaffirming his two claims: (1) insufficiency of the evidence to support his conviction and (2) ineffective assistance of counsel.[29] Also, on September 8, 2008, the petitioner filed an Amended Traverse to the State's Answer in Opposition to Writ of Habeas Corpus.[30] Therein, the petitioner argued that the Louisiana Court of Appeal, Fifth Circuit, failed to adequately review pro se writ applications that were filed in that court between February 8, 1994 through May 22, 2007.[31] The petitioner attached to his Amended Traverse an article from the New Orleans Times Picayune dated July 1, 2008 entitled, "Inmates Say Judge Ignored Appeals."[32] The article detailed the claim that the Louisiana Fifth Circuit Court of Appeal allegedly failed to submit pro se writ applications to review by a three-judge panel from February 8, 1994 to May 22, 2007.[33] The petitioner's conviction was affirmed by the Louisiana Fifth Circuit Court of Appeal on May 31, 2005. His state post-conviction application was submitted with the same court on March 16, 2007, and was subsequently denied

---

[29]*See* Fed. Rec. Doc. 14, Traverse to Response to Habeas Petition stamp dated September 8, 2008.

[30]*See* Fed. Rec. Doc. 15, Amended Traverse to Response to Habeas Petition stamp dated September 8, 2008.

[31]*Id.*

[32]*Id.*

[33]*Id.*

on March 20, 2007. All events occurred during the time period at issue.[34] In his

Amended Traverse, the petitioner stated that he filed a writ application with the

Louisiana Supreme Court on August 6, 2008, alleging that his due process rights were

violated as a result of the lack of full review of his conviction by the Louisiana Fifth

Circuit Court of Appeal.[35]

On October 10, 2008, this Court issued an Order to the petitioner requiring

clarification as to whether he was attempting to amend his federal habeas petition with

the filing of his Amended Traverse.[36] In the Order, this Court advised the petitioner

that any attempt to amend his habeas petition would make the habeas petition a

"mixed petition," i.e., a habeas petition containing both exhausted and unexhausted

claims.[37] The petitioner was informed that an amended petition would then be subject

to dismissal without prejudice for failure to exhaust state court remedies.[38] Further,

in the Order, the petitioner was informed that this Court must receive notification no

---

[34]*Id.*

[35]*See* Fed. Rec. Doc. 15, Amended Traverse to Response to Habeas Petition stamp dated September 8, 2008.

[36]*See* Fed. Rec. Doc. 16, Order Regarding Amended Traverse stamp dated October 10, 2008.

[37]*Id.*

[38]*See Pliler v. Ford*, 542 U.S. 225, 229, 125 S. Ct. 2441, 2444, 159 L.Ed. 2d 338, citing *Rose v. Lundy*, 455 U.S. 509, 522, 102 S. Ct. 1198, 71 L.Ed. 2d 379 (1982).

later than November 10, 2008 of whether he was attempting to amend his federal habeas petition by including the issue that his due process rights were violated as a result of the lack of full review of his conviction by the Louisiana Fifth Circuit Court of Appeal.[39]  After receiving no response from the petitioner, this Court issued an Order on November 18, 2008 stating that the Amended Traverse is rejected and that the Court does not accept the pleading as an attempt to amend the petitioner's federal habeas petition.[40]

Accordingly, this Court shall proceed to review the pertinent facts, then address the merits of the petitioner's claims raised in his original habeas petition.[41]  The State concedes, and this Court agrees, that this petition is timely and that all claims are exhausted.

---

[39]*See* Fed. Rec. Doc. 16, Order Regarding Amended Traverse stamp dated October 10, 2008.

[40]*See* Fed. Rec. Doc. 17, Order Rejecting Amended Traverse to State's Answer in Opposition to Writ of Habeas Corpus stamp dated November 18, 2008.

[41]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008.

In December of 2002, fifteen-year-old J.S.,[43] confined to a wheelchair from cerebral palsy, lived in an apartment in Harvey with her brother and her mother. In addition, the petitioner, thirty-five year old Timothy Turner, his wife, Othalene Turner, and his step-son, Charles Henry, Othalene's adopted child, also lived in the apartment. The Turners had resided in the apartment since March of 2002. Charles Henry, who was "mildly mentally retarded," came to live at the apartment later in 2002. J.S. and her mother, Ms. S., slept in a bed in the downstairs living room. Charles Henry slept on the floor next to the bed.

On December 18, 2002, Ms. S. and Othalene went to Lafayette. J.S. testified that, on that particular night, Mr. Turner slept in the bed with her for the first and only time. J.S. awoke to find Mr. Turner on top of her. She asked Mr. Turner what he was doing. J.S. testified that she felt his penis go inside her vagina. J.S. testified that she tried, but was unable to push him off. She called out for her brother sleeping upstairs,

---

[42]After a thorough review of the record, this statement of facts is taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Turner*, 05-75 (La. App. 5 Cir. 5/31/05); 904 So.2d 816 (footnotes omitted).

[43]The Fifth Circuit's opinion indicated that the victim was identified by her initials because she was a minor and the victim of a sex crime. *See* La.R.S. 46:1844(W). The victim's mother's initial was used to protect the victim's identity.

but he did not come down. She also screamed Charles Henry's name. The third time she screamed for Charles Henry, he came to help her. With Charles Henry's aid, she was able to break free from Mr. Turner. J.S. testified that Mr. Turner told her not to tell her mother. However, when her mother got home, J.D. told her mother to bring her to the hospital because Mr. Turner had raped her.

Ms. S. testified that when she returned to the apartment on December 19, she found J.S. sitting in her wheelchair by the door. J.S. started crying and said, "Momma, I'm hurting." When Ms. S asked what was wrong, J.S. replied, "Timothy raped me." J.S. and her mother went into the bathroom, where Ms. S. "checked her." Afterwards, Ms. S. called 911. Ms. S. testified that J.S. told her that Charles Henry had witnessed what happened as he had been sleeping in his usual spot on the floor. Ms. S. confronted Mr. Turner and he denied the allegations. He told Ms. S. to call the police if she did not believe him.

According to Ms. S., she and Othalene had known each other for ten years, and had been "sexually involved from time to time." These sexual activities included Mr. Turner "[f]rom time to time," which took place at the apartment "[f]rom time to time." However, during the period of time she had known the Turners, Ms. S. never suspected them of making sexual overtures toward J.S. Ms. S. testified that she had convictions for assault and battery and possession with intent to distribute marijuana.

Deputy Lyndon Schmitt and Detective Sergeant Terry Graffeo, Sr. of the Jefferson Parish Sheriff's Office (JPSO) responded to Ms. S.'s call. Deputy Schmitt arrived between 2:00 and 2:30 a.m. Detective Graffeo arrived at approximately 2:45 a.m. Deputy Schmitt testified that he met with Ms. S. and then attempted to speak with J.S. However, J.S. was very upset, was crying , and wanted her mother. The Deputy advised Mr. Turner of his constitutional rights, but told him that he was not under arrest at the time. Eventually, J.S. told Deputy Schmitt what had happened to her. Charles Henry told Deputy Schmitt that he witnessed the events. Deputy Schmitt spoke to the victim's brother, but he was not aware of what happened.

Detective Graffeo testified that J.S. was upset and crying when he arrived at the scene, but that he could understand some of the things that she told him. Detective Graffeo also spoke to Mr. Turner, who told the officer that he had been advised of his rights and that he understood them. Mr. Turner also told Detective Graffeo that he was a friend of the family, that he had slept in the bed with J.S. several times, and that his wife could confirm this information. Mr. Turner denied that he had any sexual relationship with J.S.

Detective Graffeo interviewed Mr. Turner's wife, Othalene, and Charles Henry, who gave tape-recorded statements to the officer. Othalene denied that Mr. Turner

ever slept or lay in the bed with J.S. The detective estimated that the area where Charles Henry slept was approximately one foot from J.S.'s bed. After Detective Graffeo completed the interviews with the witnesses, Mr. Turner was arrested. At jail, Mr. Turner consented to a search of his person for physical evidence.

Detective Graffeo brought J.S. and her mother to Children's Hospital, where J.S. related the events. There, the victim underwent an emergency room sexual assault examination. Dr. Scott Benton, and expert in the field of pediatric forensic medicine, testified that he reviewed J.S.'s records contained in the clinic's file. According to the emergency room records, J.S. told the emergency room doctor that her mother's friend's husband forced her down on a bed and put his "'private inside [her].'" Dr. Benton testified that, at a follow-up visit at the clinic two weeks later, J.S. gave an audio taped statement in which she said that Mr. Turner forced himself on her and put his "'penis up in [her] private part.'" She said she tried to push Mr. Turner off of her, that her hands were held back, and that she was screaming for her brother. She also said that "'[h]e tried to put his penis in [her] mouth,'" but that "'[she] wouldn't let him[.]'" Further, J.S. said that Mr. Turner told her to shut up and not to tell her mother. She said that Charles Henry witnessed the rape incident.

The emergency room examiners concluded that J.S.'s vaginal examination was abnormal because of increased vaginal erythema, or redness, and an abnormal hymen,

with "ragged remnants." However, based on his review of the emergency report and photographs of the victim's external genitals, Dr. Benton concluded that the examination was normal. Although the emergency room records reflected that there was a lesion of unknown etiology at the entrance of J.S.'s vagina, Dr. Benton did not classify the lesion as evidence of trauma because it could have resulted from other causes, explaining that he did not want to "overcall" the physical findings. He found no physical evidence of intercourse or rape in this case. However, he explained that it was common for physical findings to be lacking. In his experience, 90 percent or more of children alleging rape do not present with any physical findings. Dr. Benton testified that J.S.'s examination was in line with these cases.

At trial, Charles Henry testified that he was seventeen-years-old and that he slept on the floor next to J.S.'s bed. Charles Henry admitted that he talked to the police the night they were called out, but he did not remember what he told them. He specifically did not recall telling the police that Mr. Turner had attacked J.S. Over Mr. Turner's objection, Charles Henry's taped statement to Detective Graffeo taken at 3:45 a.m. on December 19, 2002 was played for the jury. In this statement, Charles Henry said that he woke up when he heard J.S. screaming and that Mr. Turner pulled J.S.'s pants down and raped her. Charles Henry said that he tried to push Mr. Turner off J.S. Afterward, Mr. Turner pulled J.S.'s pants up and slept in the bed with her as

if nothing had happened. Charles Henry said in his taped statement that Mr. Turner told him not to tell anyone what he saw. When Charles Henry tried to call the police, Mr. Turner disconnected the telephone.

After the statement was played, Charles Henry testified that he had lied to the police in his statement because J.S. told him to lie. He stated that J.S. told him to lie to the police and that nothing had happened. Further, he denied that he had witnessed Mr. Turner rape J.S. Charles Henry said that he was in a special education class at Higgins in the eleventh grade. He also testified that he was not taking Prozac on December 18, 2002, but he was on kidney medication, which he had taken that day.

Mr. Turner's wife, Othalene, testified that J.S. sometimes slept in the bed with her and her husband in the apartment, and that J.S. had slept in the bed with her and her husband on several occasions before they moved to the apartment in Harvey. Othalene testified that J.S. always slept in the bed with them when they were at the Sun Suites on Manhattan Boulevard. However, Othalene was confronted with the transcription of her statement to Detective Graffeo in which she stated that, since March of 2002, they had lived in three other places before moving to the apartment with Ms. S. and her children. In the statement, she contended that Mr. Turner had never slept in the bed with J.S. there. In Othalene's statement, she said that Mr. Turner might sit or lay on J.S.'s bed when other people were present, but that he had

never slept in the bed with J.S. overnight.  Her statement also indicated that she had

been shocked by J.S.'s allegations, because Mr. Turner had never gone downstairs to

sleep with her before.  When asked why she had not told Detective Graffeo that Mr.

Turner had previously slept in the bed with J.S., Othalene explained that it had not

occurred to her at that time.  She then testified that J.S. had in fact slept and lain in the

bed with both her and Mr. Turner, but not overnight.

Othalene testified that Charles Henry was a truthful child, but had undergone

some changes in 2000.  After that year, he made up things and lied.  According to

Othalene, he had been placed in the New Orleans Adolescent Hospital because of a

"mental breakdown," and had been released from the hospital the week before this

incident.  She said that Charles Henry has "psychosis NOS," and that he is not

responsible for his actions or things that he says.  She testified that she told Charles

Henry to tell the truth at trial.  According to Othalene, Charles Henry had been on

medication since 2002, and was currently on Prozac and Polycitrate for his kidneys.

She claimed that Charles Henry hallucinates when he misses his medicine.  While

Othalene did not see Charles Henry take his medicine on December 18, she said that

he told her that he had taken it.  Othalene admitted to a prior conviction of two counts

of forgery and was currently on probation.

Mr. Turner testified at trial.  He denied raping J.S.  Mr. Turner admitted that he

laid on the bed with J.S. that night and that Charles Henry was on the floor. They were listening to the radio, and then "we all went to sleep." The next morning, J.S.'s brother left for work. Mr. Turner went to work at 6:00 that evening. He came home later that night and went upstairs to lie down. His wife and Ms. S. returned home later. Mr. Turner learned that J.S. had told his wife and Ms. S. that he had raped her. When his wife came upstairs to ask him about it, Mr. Turner said that he denied any knowledge of what J.S. was talking about, and that he told Ms. S. to take J.S. to the hospital if Ms. S. did not believe him. Mr. Turner consented to give a deoxyribonucleic acid (DNA) sample in order to prove his innocence.

According to Mr. Turner, his wife was being paid to take care of J.S., and he assisted his wife with duties that she could not perform, such as lifting J.S. or carrying J.S. to the bathroom. He said that he would never have hurt J.S. Mr. Turner claimed that J.S. likes "special attention" and had been known to lie if things did not go her way. On cross-examination, he insisted that he did not sleep in the bed with J.S. on the night of December 18, 2002, emphasizing that he "laid" in the bed with her and that he slept upstairs, as always. Mr. Turner admitted to having a conviction for second degree battery.

Pamela Williams (Williams), a forensic serologist, was accepted as an expert in forensic science. She analyzed the sheets, pillow cases, and comforter that were

collected from the victim's bed, and analyzed J.S.'s panties and her sexual assault kit. She also had reference samples from Mr. Turner, which included his hair, saliva, and blood. Williams testified that she found no seminal fluid on any of the evidence which she examined. However, Williams stated that in about half of the cases in which she examines a rape kit, she finds no seminal fluid. Williams found small stains, that might be blood, on the fitted sheet and two of the pillow cases, but there was an insufficient sample for analysis. In addition, Williams testified that there was possibly blood on J.S.'s underwear. The report indicates she found human blood on the comforter.

Bonnie Dubourg (Dubourg), an expert forensic DNA analyst, testified that she examined a cutting from J.S.'s panties and two vaginal swabs. According to Dubourg, she only found J.S.'s genetic profile on these items and there was no seminal fluid present. The experts' reports were introduced into evidence.

## STANDARD OF REVIEW

The AEDPA includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law where there has been an adjudication on the merits in state

court proceedings.[44]

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."[45] The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[46]

---

[44] Section 2254(d) provides in full:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[45]*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[46]*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485.

Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[47]  The question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold. *Day v. Quarterman*, -- F.3d --, 2009 WL 1110589 (5th Cir. 4/29/09), citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## ANALYSIS

## CLAIM #1: Insufficiency of Evidence

The petitioner alleges that he was denied his Sixth and Fourteenth Amendment rights under the United States Constitution because the evidence presented at trial was insufficient to support the conviction for LSA-R.S. 14:42, Aggravated Rape of a Female Juvenile.[48]  The petitioner specifically alleges that no rational trier of fact could have found him guilty beyond a reasonable doubt based on the evidence presented by the State during trial.[49]  He contends that the only evidence to indicate

---

[47]*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *quoting* 28 U.S.C.§ 2254(d)(2).

[48]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 5-9.

[49]*Id*. at 5.

that a rape had occurred was the testimony of the victim.[50]  Instead, the petitioner

argues that the testimony of a sixteen-year-old girl in a wheelchair who suffers from

cerebral palsy proved to be "sympathetic" to the jury and, once she told her story,

"[He] was essentially guilty until proven innocent beyond a reasonable doubt."[51]  The

petitioner also contends that it is "nearly impossible to prove a negative, i.e., that you

did not do something."[52]  Further, he states that when the court evaluates the evidence

in the light most favorable to the prosecution, the court should determine whether a

possible alternative hypothesis is sufficiently reasonable that a rational juror could not

have found proof of guilt beyond a reasonable doubt according to the *Jackson v.*

*Virginia* standard.[53]

In addressing the instant claim in connection with petitioner's direct appeal, the

Louisiana Fifth Circuit Court of Appeal first set forth the applicable federal law, along

with corresponding state law, stating:

> The standard for appellate review of the sufficiency of

---

[50]*Id*. at 7.

[51]*Id*. at 8.

[52]*Id*.

[53]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 8.  *Jackson v. Virginia* states, "[h]abeas relief under section 2254 on a claim of insufficient evidence is appropriate only 'if it is found that upon the record evidence adduced at the trial no rational tier of fact could have found proof of guilt beyond a reasonable doubt.'" 443 U.S. 307, 322-26, 99 S.Ct. 2781, 2791-92, 61 L.Ed.2d 560 (1979).

evidence is "whether, after viewing the evidence is the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt."[54]

The state appellate court then examined the definition of the crime for which the petitioner was convicted.

> In December of 2002, aggravated rape was defined in La. R.S. 14:42, in pertinent part, as follows:
>
> A.  Aggravated rape is a rape committed upon a person, sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
>
> (4) When the victim is under the age of twelve years.  Lack of knowledge of the victim's age shall not be a defense.
>
> (5) When two or more offenders participated in the act.
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
>
> B.  For purposes of Paragraph (5), "participate" shall mean:
>
> (1) Commit the act of rape.
>
> (2) Physically assist in the commission of such act.
>
> C.  For purposes of this Section, the following words have

---

[54]*State v. Turner*, 05-75 (La.App. 5 Cir. 5/31/05); 904 So.2d 816, 821, *quoting  Jackson v. Virginia*, 443 U.S. 307, 322-26, 99 S.Ct. 2781, 2791-92, 61 L.Ed.2d 560 (1979); *State v. Bailey*, 04-85, 4 (La. App. 5th Cir. 5/26/04), 875 So.2d 949, 954-955, *writ denied*, 04-1605 (La. 11/15/04), 887 So.2d 476.

the following meanings:
> (1) "Physical infirmity" means a person who is a quadriplegic or paraplegic.
> (2) "Mental infirmity" means a person with an intelligence quotient of seventy or lower.

> La.R.S. 14:41 defines rape, in pertinent part, as follows:
> A.  Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
> B.  Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.[55]

Thereafter, the state appellate court reviewed the evidence submitted at trial, addressing the petitioner's claim of insufficient evidence to support his conviction, specifically with regard to J.S.'s testimony.

> The Defendant does not contest the sufficiency of the evidence as to the statutory elements of aggravated rape. Rather, he attacks the credibility of J.S.'s testimony.  In support of his argument, he urges that he was only convicted because J.S. was a sympathetic witness who had lied to her mother and felt compelled to maintain the lie at trial.  The Defendant also contends that his actions following the report of the rape, including telling J.S.'s mother to take J.S. to the hospital and voluntarily submitting to DNA testing, indicate that he was telling the truth.  He asserts that the absence of evidence containing his DNA supports the conclusion that J.S. lied.  The Defendant points to Dr. Benton's testimony that there was no evidence that J.S. had been raped, and to Charles Henry's testimony in which he recanted his earlier support

---

[55]*State v. Turner*, 05-75 (La.App. 5 Cir. 5/31/05); 904 So.2d 816, 822.

of J.S.'s account of events. Under these circumstances, the Defendant contends that no rational truer (sic) of fact could have found him guilty beyond a reasonable doubt.

Our analysis of the sufficiency of the evidence does not include Charles Henry's recanted statement, because a prior inconsistent statement of a witness may be admissible only for impeachment purposes; it cannot be used as substantive evidence of a defendant's guilt.[56]

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier-of-fact, is sufficient support for a requisite factual conclusion.[57] In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.[58] In *State v. Tapps*, 02-0547 (La. App. 5th Cir. 10/29/02, 832 So.2d 995, 1001, *writ denied*, 02-2921 (La. 4/21/03); 841 So.2d 789, this Court held that the juvenile victim's testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape.

From the date of the incident, J.S., continuously maintained that the Defendant raped her, despite her resistance. The details of the incident were consistent when she told her mother right after the event, the police officers, the doctors, and in her audio taped statement two weeks after the incident. At trial, J. S. testified that she knew that

---

[56]*See State v. Cousin*, 96-2973, 9-11(La. 4/14/98); 710 So.2d 1065, 1069-1070. *See also State v. Noil*, 01-521, 15 (La. App. 5th Cir. 12/26/01); 807 So.2d 295, 307, *writ denied*, 02-276 (La. App. 5th Cir. 10/25/02); 827 So.2d 1177.

[57]*State v. Robinson*, 02-1869, 16 (La. 4/14/04); 874 So.2d 66, 79, *cert denied*, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004).

[58]*State v. Hotoph*, 99-243, p. 17 (La. App. 5th Cir. 11/10/99); 750 So.2d 1036, 1045, *writ denied*, 99-3477 (La. 6/30/00); 765 So.2d 1062 and *writ denied*, 00-0150 (La. 6/30/00); 765 So.2d 1066.

she had sworn to tell the truth, that she was telling the truth, and that if she did not tell the truth, God would not be happy with her. Her testimony and the Defendant's version of the events were in conflict.

The jury made a credibility determination and obviously believed J.S.'s version of the events over the Defendant's version. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[59] It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.[60] Viewed in the light most favorable to the prosecution, we find that the State proved the essential elements of the crime beyond a reasonable doubt.[61]

This Court finds that the above reasoning does not represent an unreasonable application of the law enunciated by the Supreme Court in *Jackson*, *supra*, to the applicable facts. Thus, the petitioner's first claim is without merit and does not justify federal habeas relief.

## CLAIM #2: Ineffective Assistance of Counsel

The petitioner alleges three claims in his federal habeas petition relating to the effectiveness of his trial counsel, stating that: (1) counsel was ineffective for failing to challenge the sufficiency of the State's evidence, (2) counsel was ineffective in

---

[59]*Bailey*, 04-85 at 5, 875 So.2d at 955.

[60]*State v. Marcantel*, 00-1629, 9 (La. 4/3/02); 815 So.2d 50, 56; *Bailey*, 04-85 at 5, 875 So.2d at 955.

[61]*State v. Turner*, 05-75 (La.App. 5 Cir. 5/31/05); 904 So.2d 816, 822-823.

failing to pursue plea negotiations prior to trial to avoid the possibility of a life sentence, and (3) counsel failed due to the cumulative impact of his errors at trial.[62] This Court will group the three claims under the heading "Claim #2: Ineffective Assistance of Counsel" and analyze the petitioner's three arguments as a sub-claims A, B, and C.

Under *Strickland v. Washington*,[63] to prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding.[64] A failure to satisfy one prong of the *Strickland* test negates the need to consider the other.[65]

To prevail on the deficiency prong, the petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.[66] "Counsel's performance is deficient if it falls below an objective

---

[62]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 9-10.

[63]466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

[64]*Id*. at 678-88.

[65]*Id.* at 697.

[66]*See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

standard of reasonableness."[67]  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.[68] "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[69]  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.[70]

In order to prove prejudice with respect to trial counsel, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[71]  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."[72]  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[73]

---

[67]*Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).

[68]*Strickland*, 466, U.S. at 689.

[69]*Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) *quoting Strickland*, 466 U.S. at 690.

[70]*See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

[71]*Strickland,* 466 U.S. at 694.

[72]*Id.*

[73]*Crockett*, 796 F.2d at 793.

The petitioner bears the burden of proof when asserting this ineffective assistance of counsel claim. He "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[74] If a court finds that he has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.[75]

When the petitioner's ineffective assistance of counsel claim was asserted in his state post-conviction proceedings, the Twenty-Fourth Judicial District Court, Parish of Jefferson denied relief, concluding:

> Under our Constitution, an accused has the right to trial and to the effective assistance of counsel at that trial. The petitioner received a trial by jury with the assistance of a zealous advocate. His constitutional rights were fully honored.[76]

The state district court analyzed the petitioner's ineffective assistance of counsel sub-claims A, B, and C further, which will be discussed in this Court's analysis *infra*. Without assigning additional reasons, the Louisiana Fifth Circuit Court of Appeal and

---

[74]*Jernigan v. Collins*, 980 F.2d 292, 296 (5th cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th cir. 2000); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000.).

[75]*Strickland*, 466 U.S. at 697.

[76]*See* State Rec. Vol. III of IV, Order dated February 15, 2007.

the Louisiana Supreme Court likewise denied relief.[77]  Because a claim of ineffective

assistance of counsel is a mixed question of law and fact,[78] this Court must defer to the

state court determination rejecting such a claim unless the petitioner shows that the

decision was contrary to, or involved an unreasonably application of clearly

established federal law, as determined by the Supreme Court of the United States.[79]

For the following reasons, this Court finds that neither of those conditions is met;

therefore, this federal court should defer to the state court's ruling and deny federal

habeas relief.

### SUB-CLAIM "A":  Failure to Challenge Sufficiency of the Evidence

In his petition, the petitioner alleges that counsel failed to challenge the

sufficiency of the evidence produced at trial by the State.[80]  The Twenty-Fourth

Judicial District Court, Parish of Jefferson denied sub-claim A, stating:

> Petitioner claims that counsel was ineffective for failing to
> challenge the sufficiency of the evidence.  In his original
> brief, he complains that the state failed to prove force or
> threats or that the victim was prevented from resisting.  In
> his supplemental memorandum, he argues that counsel was

---

[77]*State ex re. Turner v. Cain*, 07-176 (La.App. 5 Cir. 3/20/07)(Unpublished Order); *and State ex rel. Turner v. State*, 07-927 (La. 2/1/08); 976 So.2d 712.

[78]*Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[79]*Id.*; *see also* 28 U.S.C. § 2254(d)(1).

[80]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 11-15.

ineffective by failing to introduce evidence that he claims would establish that no penetration occurred.

On direct appeal, petitioner argued that the State had not carried its burden of proof regarding penetration. The Fifth Circuit addressed this argument:

> "However, based on his review of the emergency report and photographs of the victim's external genitals, Dr. Benton concluded that the examination was normal. Although the emergency room records reflected that there was a lesion of unknown etiology at the entrance of J.S.'s vagina, Dr. Benton did not classify the lesion as evidence of trauma because it could have resulted from other causes, explaining that he did not want to "overcall" the physical findings. He found no physical evidence of intercourse or rape in this case. However, he explained that it was common for physical findings to be lacking. In his experience, 90 percent or more of children alleging rape do not present with any physical findings. Dr. Benton testified that J.S.'s examination was in line with these cases." *Turner*, 904 So.2d at 819.

Issues of sufficiency of the evidence have been addressed at length on direct appeal. The Fifth Circuit has already found that evidence was constitutionally sufficient to convict. Thus the petitioner has had full review of this claim and is not entitled to further judicial review. See LSA-C.Cr.P. art. 930.4(A).[81]

Based on the above, the court concluded that the petitioner's trial counsel provided

---

[81]*See* State Rec. Vol. III of IV, Order dated February 15, 2007.

"the assistance of a zealous advocate."[82]

The petitioner argues that the Louisiana Fifth Circuit Court of Appeal stated in its opinion, "The defendant does not contest the sufficiency of the evidence as to the statutory elements of aggravated rape"[83] and that this statement by the appellate court indicates a "clear violation of the first prong of the *Strickland* standard."[84] The petitioner offers no further support or explanation for his argument.[85] It appears that the petitioner wants this Court to assume that the statement made by the Louisiana Fifth Circuit Court of Appeal reflects the court's opinion that trial counsel was ineffective in testing the sufficiency of the evidence. This assumption is incorrect. The quoted statement does not reflect the court's view of defense counsel. In fact, by making the statement, the court was identifying the petitioner's argument from his appellate brief. The sole argument made by the petitioner in the appellate brief was that the evidence was insufficient to support the jury's verdict because the only evidence presented was the unbelievable testimony of the victim.[86] Moreover, the two

---

[82]*Id.*

[83]*State v. Turner*, 05-75 (La. App. 5 Cir. 5/31/05); 904 So.2d 816, 822.

[84]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 11.

[85]*Id.*

[86]*See* State Rec. Vol. II of IV, Original Brief of Appellant No. 2005-KA-0075.

sentences following the cited sentence clarify this point.  The court writes, "Rather he [petitioner] attacks the credibility of J.S.'s testimony.  In support of his argument, he urges that he was only convicted because J.S. was a sympathetic witness who had lied to her mother and felt compelled to maintain the lie at trial."[87]  These two sentences, as well as the remainder of the paragraph, clarify that the paragraph's purpose is to introduce and to summarize the petitioner's appellate argument for the reader.  The petitioner's argument is without merit as it is based on an erroneous premise that the Louisiana Fifth Circuit Court of Appeal concluded that defense counsel did not contest the sufficiency of the evidence.

In his next argument, concerning counsel's ineffectiveness for failing to challenge the sufficiency of the evidence, the petitioner states that the trial court judge gave three circumstances for the second element of the crime of aggravated rape as a juvenile in the jury instructions:

> (1) that the victim resisted to the utmost but her resistance was overcome by force; (2) that the victim was prevented from resisting by threats of great immediate bodily harm with apparent power of execution; and (3) that the victim was prevented from resisting the act because she was a paraplegic or quadriplegic or had an intelligence quotient of 70 or lower.[88]

---

[87]*State v. Turner*, 05-75 (La. App. 5 Cir. 5/31/05);  904 So.2d 816, 822.

[88]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 11-12.

The petitioner argues that the record is void of any attempt by the State to prove, beyond a reasonable doubt, any of these three circumstances.[89] He further argues that the third circumstance includes the terms paraplegic and quadriplegic to describe the victim, when, in fact, no one claims that the victim is a paraplegic or a quadriplegic.[90] Petitioner states that trial counsel "failed to provide his client with any legal challenge or argument to the statutory elements of aggravated rape."[91] In all of the above arguments, the petitioner fails to offer any evidence to show deficient performance on the part of his counsel. The petitioner fails to demonstrate how trial counsel's performance fell below an objective standard of reasonableness, so as to meet the first prong of the *Strickland* analysis.

In response to the petitioner's application for post-conviction relief, the Twenty-Fourth Judicial District Court, Parish of Jefferson, addressed the ineffective assistance of counsel claim and stated:

> In addition, a review of the record contradicts the petitioner's claims. The court record and trial transcript

---

[89]*Id.*

[90]*Id.* It is apparent that the trial court judge used the terms paraplegic and quadriplegic in the jury instruction because he was combining Louisiana Revised Statute 14:42A(6) which states, "When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance" with Louisiana Revised Statute 14:42C(1), which defines "physical infirmity" as a person who is a quadriplegic or paraplegic.

[91]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 14.

reveal zealous advocacy by trial counsel and demonstrate a spirited challenge to the State's case. Counsel filed a large number of motions, interviewed a prosecution witness prior to trial, called defense witnesses to testify, cross-examined State witnesses, called an expert medical witness, and called the defendant to testify on his own behalf.[92]

It is the petitioner's burden to prove to this Court that the decisions made by the state courts were contrary to federal law or that they reflect an unreasonably application of federal law.[93] Petitioner provides no new evidence or arguments as to why this court should overturn the previous judicial rulings.

Petitioner argues that the Assistant District Attorney for the Parish of Jefferson, Anne M. Wallis, stated on page 6 of her appellee brief, "The record in this case does not indicate that Motion for New Trial or a Motion for Post Verdict Judgment of Acquittal was filed by the defense."[94] This is a misquote by the petitioner. The sentence that the petitioner is attempting to quote from the Assistant District Attorney's brief states, "Finally, the defendant asserts, without briefing, that his counsel was ineffective for failing to file a motion for new trial or a motion for post

---

[92]*See* State Rec. Vol. III of IV, Order dated February 15, 2007.

[93]*Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[94]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 14.

verdict judgment of acquittal."[95]  The Assistant District Attorney's statement is a summary of the petitioner's argument and it is not a statement of the State's opinion concerning defense counsel's performance.  In addressing the petitioner's argument that trial counsel was ineffective for failing to file a motion of a new trial or for a post-judgment verdict of acquittal, the Twenty-Fourth Judicial District Court, Parish of Jefferson stated the following:

> Furthermore, in order to prevail on such a claim, the petitioner must establish that but for counsel's error, he would have been granted a new trial.  In light of the fact that the Fifth Circuit has found the evidence sufficient to convict, petitioner cannot prove that post-trial motions, if filed, would have been granted.  For these reasons, he is not entitled to relief.[96]

Petitioner fails to show how this state court decision is contrary to federal law or is a misapplication of federal law.

Petitioner has provided no evidentiary or legal support for his claim and, therefore, the burden of proof is not met.  Thus, sub-claim A is without merit and does not justify federal habeas relief.

## SUB-CLAIM "B": Failure to Pursue Plea Negotiations Prior to Trial

The petitioner argues that his trial counsel was ineffective in failing to

---

[95]*See* State Rec. Vol. III of IV, State's Response to Application for Post-Conviction Relief stamp dated January 12, 2007.

[96]*See* State Rec. Vol. III of IV, Order dated February 15, 2007.

vigorously pursue plea negotiations prior to trial in order to avoid the possibility of a life sentence. A habeas petitioner has the burden of proof with respect to a claim of ineffectiveness.[97] An uncorroborated assertion that counsel failed to take some action or acted improperly is insufficient to satisfy this burden of proof. In order to make a successful ineffective assistance of counsel claim, the petitioner must show, by a preponderance of the evidence, that the State would have offered a plea bargain, even if defense counsel had pursued one.[98] However, the petitioner provides no evidence that the prosecution considered or was willing to tender a plea offer. Therefore, the petitioner is unable to show any prejudice and, as such, this claim is without merit.

The petitioner does cite five cases to support his argument that failure to pursue plea negotiations constitutes ineffective assistance of counsel.[99] The Twenty-Fourth Judicial District Court, Parish of Jefferson addressed these cases when it dismissed sub-claim B, stating:

> The petitioner argues that trial counsel was ineffective by failing to pursue a favorable plea agreement with the state. The cases from other jurisdictions cited by the petitioner are not controlling or persuasive. In each case he quotes, the government had made an offer to the defense, which

---

[97]*See* 28 U.S.C. §2254(e)(1).

[98]*See Wolfe v. Dretke*, 116 Fed.Appx. 487, 495-96, 2004 WL 2538383 (C.A. 5 (Tex.)).

[99]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 15-18.

> was rejected on advice of counsel. By contrast, in this case,
> there is not suggestion that the State was willing to offer
> any plea agreement.[100]

This Court agrees with the state district court. In all of the cases cited by the

petitioner, the prosecution made a plea offer to the defense, which makes each citation

inapplicable to the case at hand because, here, there is no evidence that the State

offered a plea bargain.[101] Thus, the petitioner's claim that counsel was ineffective in

failing to vigorously pursue plea negotiations prior to trial is without merit and does

not warrant federal habeas relief.

## SUB-CLAIM "C": Cumulative Impact of Trial Counsel's Errors

The petitioner alleges that he was denied his Sixth and Fourteenth Amendment

rights under the United States Constitution because of the cumulative impact of his

---

[100]*See* State Rec. Vol. III of IV, Order dated February 15, 2007.

[101]First, the petitioner cites *Turner v. Tennessee*, 664 F.Supp. 113 (M.D. Tenn. 1987), which this Court notes has been vacated and reversed. In *Turner*, the prosecution made a two-year plea offer that was rejected. Next, the petitioner cites *Pennington v. State*, 768 S.W.2d 740 (Tex.Ct.App. 1988) in which trial counsel was rendered ineffective for failing to advise the defendant of two plea bargains. Third, the petitioner cites *Alvrenaz v. Ratelle*, 831 F.Supp. 790 (S.D.Cal. 1993) in which the defendant stated he would have accepted the plea had he known of the true exposure. Again, a plea offer was made. Fourth, in *United States v. Day*, 969 F.2d 39 (3rd Cir. 1992) the defendant was offered a five-year sentence in exchange for a guilty plea. Lastly, in *State v. Lentowski*, 212 Wis.2d 849, 569 N.W.2d 758 (Wis.App. 1997), the district attorney offered to dismiss all other charges if the defendant pled guilty to two counts of sexual exploitation of a child. All of the cases cited by the petitioner involve plea offers, which directly contradicts the facts at hand.

counsel's errors at trial.[102]  He argues that counsel failed to take steps to ensure that the case would not go to the jury, given that the evidence was insufficient to prove all of the elements of aggravated rape.[103]  The Twenty-Fourth Judicial District Court, Parish of Jefferson denied sub-claim C, stating:

> In his first sub-claim, the petitioner does not claim individual errors on the part of his attorney.  Rather, he argues that even if none of his attorney's errors individually entitle him to relief, all of these errors viewed together do. Post-conviction relief is available only upon proof of the limited and exclusive grounds set forth in LSA-C.Cr.P. art. 930.3.  As the court put it in *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 2/5/87) "Twenty times zero equals zero."
>
> The court notes that although the petition cites two federal cases in his brief in support of the cumulative error doctrine, Louisiana courts do not recognize cumulative error as a basis for relief.  *State v. Copeland*, 530 So.2d 526 (La. 1988).  In sum, this portion of petitioner's claim fails for lack of compliance with LSA-C.Cr.P. art. 930.3.[104]

---

[102]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 10-11.

[103]*Id.*

[104]*See* State Rec. Vol. III of IV, Order dated February 15, 2007.  Louisiana Code of Criminal Procedure article 930.3 states if the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:

(1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;

(2) The court exceeded its jurisdiction;

(3) The conviction or sentence subjected him to double jeopardy;

The petitioner does not cite any cases in support of his cumulative error theory in his federal habeas petition other than *Strickland v. Washington*.[105] The State argues that the petitioner's contention is without merit citing *Turner v. Quarterman*.[106] In *Quarterman* the United States Fifth Circuit Court of Appeal issued the standard of analysis for reviewing cumulative error claims as follows:

> [F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."[107]

The State contends that petitioner failed in his burden of proving that his counsel's actions were errors which "so infected the entire trial that the resulting conviction

---

(4) The limitations on the institution of prosecution had expired;

(5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or

(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.

(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

[105]*See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated April 7, 2008, p. 10-11.

[106]481 F.3d 292, 301 (5th Cir. 2007), *citing Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993).

[107]*Id*. at 301 *citing Derden v. McNeel*, 978 F.2d 1453, 1545 (5th Cir. 1992).

violates due process."[108]  The State is correct.  In sum, the petitioner fails to establish that trial counsel was constitutionally inadequate in his representation nor does he show that, but for any alleged deficiency, his trial outcome would have been different. Thus, the petitioner's cumulative error argument is without merit.  Sub-claim C does not justify federal habeas relief.

Having failed to establish any violation of constitutional magnitude, petitioner is not entitled to relief pursuant to Title 28, United States Code, Section 2254.

## **RECOMMENDATION**

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that the instant habeas corpus petition be **DENIED** with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

---

[108]*See* Fed. Rec. Doc. 13, Response to Petition for Writ of Habeas Corpus stamp dated August 18, 2008, p. 26-28.

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___30th___ day of ___April___ , 2009.

LOUIS MOORE, JR.
United States Magistrate Judge